IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MELVIN GENENBACHER, and PATRICIA GENENBACHER, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.  06-3064 |
| CENTURYTEL FIBER COMPANY II, LLC, d/b/a/ LightCore, A CenturyTel Company, | ) ) ) ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant CenturyTel Fiber Company II, LLC, d/b/a LightCore, a CenturyTel Company's (LightCore) Motion to Dismiss (d/e 6).  The Court previously denied class certification. Opinion entered April 3, 2007 (d/e 20).  Therefore, only the individual claims of Plaintiffs Melvin and Patricia Genenbacher are now before the Court. The Genenbachers allege that Digital Teleport, Inc. (DTI) tortiously installed and operated an underground network of fiber optic cable

1

(Network) on their property without proper authority. They allege that LightCore is a successor in interest to DTI. LightCore asks the Court to dismiss the claims because LightCore bought DTI's assets, including the Network, through a bankruptcy sale free and clear of all such claims.

For the reasons set forth below, the Motion to Dismiss is ALLOWED in part. The Genenbachers' claims based on the installation and operation of the Network accrued against DTI at the time that the Network was installed on their property. Their only recourse for those claims is through DTI's bankruptcy proceeding; they have no claims against LightCore based on these theories. The Genenbachers, however, also allege that LightCore's personnel have subsequently come onto their property without permission. These entries may constitute separate trespasses for which the Genenbachers are entitled to recover damages, and, depending on the circumstances, may entitle the Genenbachers to declaratory relief. These claims are not dismissed.

## STATEMENT OF FACTS

DTI was formed in 1989 to construct and operate the Network over a five-state area in the central United States, including Illinois. According to the Genenbachers, DTI placed cable across their property without their

permission or any other legal authority. The Genenbachers allege that DTI may have contracted with public utilities such as SBC/Ameritech to use their easements to bury fiber optic cable for the Network. The Genenbachers allege that these utilities did not have the authority to grant permission to install the Network under their property. Notice of Removal (d/e 1), attached Complaint, ¶¶ 16-19.

In 2003, DTI was in bankruptcy. CenturyTel, Inc. (CenturyTel), bought the assets of DTI in a bankruptcy sale free and clear of all liens and claims. Memorandum in Support of Defendant CenturyTel Fiber Company II, LLC's Motion to Dismiss (d/e 7) (LightCore Memorandum to Dismiss), Exhibit 1, Order Approving Sale; 11 U.S.C. § 363. CenturyTel then formed LightCore to operate the Network. The Genenbachers allege that LightCore continues to wrongfully maintain and operate the Network in violation of their rights. The Genenbachers allege that LightCore's personnel have come onto their property wrongfully to maintain the Network. Complaint, ¶ 23.

The Genenbachers bring three claims against LightCore. Count I asserts a claim for trespass. Count II asserts a claim for unjust enrichment. Count III asks for a declaratory judgment that LightCore has no valid easement or other right to occupy their land, and cannot exercise any

3

dominion or control over their land without their consent or a decree of condemnation. LightCore asks the Court to dismiss the claims on the grounds that the claims accrued before LightCore purchased the assets from DTI, and so, LightCore bought the assets free and clear of the Genenbachers' claims. The Genenbachers respond that LightCore's continuing occupancy and use of their property is a separate, distinct tort that arises every day that LightCore continues its wrongful conduct. The Genenbachers argue that LightCore is, therefore, liable for this continuing tortious conduct that occurred after the bankruptcy sale.

## ANALYSIS

For purposes of this Motion, the Court must accept as true all of the Genenbachers' well-pleaded factual allegations contained in their Complaint and draw all inferences in the light most favorable to them. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). In addition, the Court can consider matters of public record, such as the bankruptcy court file from DTI's bankruptcy. Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994). The Genenbachers' Complaint should not be dismissed unless it appears beyond doubt that they can prove no set of facts that

would entitle them to relief. Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996).

The bankruptcy sale of DTI's assets to LightCore free and clear of liens and interests means that LightCore took ownership of the Network free of all claims that arose prior to the sale. 11 U.S.C. § 363. To state a claim, therefore, the Genenbachers' claim must have accrued after the sale.

The nature of the Genenbachers' claim and when it accrues is determined by state law. The Illinois Courts of Appeals have issued conflicting opinions concerning when a cause of action accrues for wrongful construction of underground structures, such as the Network, under the property of another. Two courts have held that the existence of the underground structure is a continuing action that results in a new cause of action each day that the structure exists on the property. Rosenthal v. City of Crystal Lake, 171 Ill.App.3d 428, 525 N.E.2d 1176, 1181 (Ill.App. 2nd Dist., 1988); Lake Shore Bldg. Co. v. City of Chicago, 207 Ill. App. 244, 1917 WL 2670, at *2 (Ill. App. 1st Dist., 1917). Another held that the construction of the structure constituted the wrongful act, and the cause of action accrued at the time of construction. Lincoln-Way Community High School Dist. 210 v. Village of Frankfort, 51 Ill.App.3d 602, 367 N.E.2d

5

318, 324 (Ill. App. 3rd Dist., 1977).

This Court must apply the rule that it believes the Illinois Supreme Court would adopt if it were presented with this question. In a slightly different context, the Illinois Supreme Court looked to the nature of the tortfeasor's actions and the injury caused by those actions. <u>Vette v. Sanitary Dist. Of Chicago</u>, 260 Ill. 432, 438, 103 N.E. 241, 243 (1913). The <u>Vette</u> case arose from defendant sanitary district's diversion of water into the Illinois River. As a result, the plaintiff's bottom land along the Illinois River was flooded. The flooding ruined the land for agricultural purposes and destroyed valuable timber. <u>Id.</u>, 260 Ill. at 435, 103 N.E. at 242. The plaintiff brought the suit eleven years after the flooding began, and the defendant raised the statute of limitations as a defense.

The Supreme Court in <u>Vette</u> held that if a permanent structure constructed by a tortfeasor necessarily causes injury to another's property, then: (1) the injury is permanent, (2) "damages for all the injury sustained must be recovered in one suit," and (3) the cause of action accrues at the construction and commencement of the operation of the structure. <u>Vette</u>, 260 Ill. at 438, 103 N.E. at 243.

In light of the Illinois Supreme Court's analysis in <u>Vette</u>, this Court

6

believes that the Illinois Supreme Court would find that DTI's construction of the cable Network under the Genenbachers' property created a permanent structure and that any injury to the Genenbachers' property was necessarily caused by the Network's continued existence and operation. As such, the Illinois Supreme Court would hold that the Genenbachers' claim was one for a permanent injury that arose at the time that DTI installed and began operating the Network. Vette, 260 Ill. at 438, 103 N.E. at 243; see also Kurtz v. Logan County, 158 Ill.App.3d 715, 511 N.E.2d 252, 254 (Ill. App. 4th Dist., 1987).[1] CenturyTel, therefore, bought the Network free and clear of all of DTI's creditors' claims, including the Genenbachers' claims. 11 U.S.C. § 363. The Genenbachers' recourse is the same as all of DTI's other creditors in DTI's bankruptcy proceeding. They have no claim against LightCore based on the ownership and operation of the Network.

The Vette Court also distinguished permanent injuries caused by a structure from intermittent injuries that may occasionally occur. These intermittent or temporary injuries may give rise to separate causes of action

---

[1] This analysis is also consistent with the laws of other states that have addressed this issue. See Peeler v. MCI, Inc., 447 F.3d 992, 993 (7th Cir. 2006); International Paper Company v. MCI WorldCom Network Services, Inc., 442 F.3d 633, 636 (8th Cir. 2006); West v. WorldCom, Inc., 2007 WL 485233, at *3 (S.D.N.Y., 2007); In re WorldCom, Inc., 320 B.R. 772, 781 (Bankr. S.D.N.Y., 2005).

for the particular injury that resulted from the intermittent act. <u>Vette</u>, 260 Ill. at 436-37; 103 N.E. at 243. In this case, the Complaint alleges that LightCore's personnel have, on occasion, wrongfully entered onto the Genenbachers' property to maintain the Network. <u>Complaint</u>, ¶ 23. If LightCore's personnel wrongfully entered the Genenbachers' property, then the Genenbachers may have a cause of action for injuries caused by these intermittent trespasses, and may, depending on the circumstances, be entitled to some of the requested declaratory relief regarding possible future trespasses. See <u>Peeler</u>, 447 F.3d at 993-94. The Genenbachers' claims for these trespasses are not dismissed.

THEREFORE, Defendant CenturyTel Fiber Company II, LLC, d/b/a LightCore, a CenturyTel Company's Motion to Dismiss (d/e 6) is ALLOWED in part. The claims based on the installation and operation of the Network are dismissed. The Genenbachers' claims based on the Defendant LightCore's personnel coming onto their property without permission after CenturyTel acquired the Network are not dismissed. LightCore is directed to file an answer to these remaining claims by June 15, 2007.

IT IS THEREFORE SO ORDERED.

ENTER: May 17, 2007.

   FOR THE COURT:

                                  s/ Jeanne E. Scott
                              JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE